UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| TALLY MAY HENRY KEY, and JAMES RICHARD KEY,<br><br>    Plaintiffs,<br><br>v.<br><br>US GREENFIBER, LLC, HOME DEPOT U.S.A., INC., and INSULATION TECHNOLOGY CORPORATION,<br><br>    Defendants. | Case No. 4:21-cv-00233-DCN<br><br>**MEMORANDUM DECISION AND PROTECTIVE ORDER** |

## I. INTRODUCTION

Pending before the Court is Defendants' Joint Motion for a Protective Order. Dkt. 37. Having reviewed the record, the Court finds that the decisional process would not be significantly aided by oral argument. Accordingly, the Court will decide the Motion on the record before it. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). For the reasons set forth below, the Court will GRANT IN PART and DENY IN PART the Motion for a Protective Order. This Memorandum Decision and Order includes both the Court's reasoning and its protective order.

## II. BACKGROUND

This is a personal injury case involving a cellulose insulation blower. Defendant Insulation Technology Corporation ("Intec") designed and manufactured the blower. Defendant Greenfiber owned and maintained the blower. Defendant Home Depot made the

blower available for rental through one of its stores. Plaintiffs Tally and James Key rented the blower. While Tally Key was using the blower, the paddles rotating inside it caught her and removed part of her arm. Plaintiffs then sued Defendants.

In discovery so far, Plaintiffs have served 91 interrogatories, 184 requests for production, 20 requests for admission and 103 topics for depositions. At issue here, Plaintiffs have served all three Defendants with notice of various topics for 30(b)(6) depositions. Defendants object to some of these topics and ask the court to issue a protective order striking them or requiring them to be rewritten with greater specificity.[1]

### III. LEGAL STANDARD

**A. Scope of Discovery**

The Federal Rules of Civil Procedure dictate the scope of discovery: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). For discovery purposes, courts define relevance broadly, regarding information as relevant if it "bears on," or might reasonably lead to information that "bears on," any material fact or issue in the action. *See Oppenheimer Fund Inc. v. Sanders*, 437 U.S. 340, 347 (1978). Proportionality is determined by "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the

---

[1] Pursuant to District of Idaho local policy, the parties participated in an informal mediation conference with one of the law clerks in an effort to resolve these matters. Unable to reach an informal resolution, the parties were within their rights to commence formal motion practice.

MEMORANDUM DECISION AND PROTECTIVE ORDER - 2

burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). "The fundamental principle of . . . Rule 26(b)(1) is that lawyers must size and shape their discovery requests to the requisites of a case." *United States v. HVI Cat Canyon, Inc.*, 2016 WL 11683593, at *4 (C.D. Cal. Oct. 26, 2016) (cleaned up). Courts must limit the frequency or extent of discovery if it becomes cumulative or duplicative or if the information is available more efficiently from another source. *See* Fed. R. Civ. P. 26(b)(2)(C).

### B. Protective Orders

Upon a showing of good cause, "the district court may issue any protective order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including any order prohibiting the requested discovery altogether, limiting the scope of the discovery, or fixing the terms of disclosure." *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1063 (9th Cir. 2004) (quoting Fed. R. Civ. P. 26(c)). The party seeking the order bears the burden of showing good cause, which it does by "demonstrating harm or prejudice that will result from the discovery." *Id.* (cleaned up). Courts have broad discretion in deciding "when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).

### C. 30(b)(6) Depositions

Because corporations cannot physically be deposed, the Federal Rules of Civil Procedure require that, upon request, they must provide a natural person to be deposed on their behalf:

> In its notice or subpoena, a party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and *must describe with reasonable particularity the matters for examination*. The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify.

Fed. R. Civ. P. 30(b)(6) (emphasis added).

"[C]orporate parties have an obligation to present witnesses who are capable of providing testimony on the noticed topics regardless of whether the information was in the witness's personal knowledge, provided that the information is reasonably available to the corporation." *Memory Integrity, LLC v. Intel Corp.*, 308 F.R.D. 656, 661 (D. Or. 2015). Corporations must identify and prepare witnesses "so that they may give complete, knowledgeable and binding answers on behalf of the corporation." *Sprint Commc'ns Co. L.P. v. Theglobe.com, Inc.*, 236 F.R.D. 524, 528 (D. Kan. 2006) (cleaned up). Though "[a]dequately preparing a Rule 30(b)(6) deposition can be burdensome, this is merely the result of the concomitant obligation from the privilege of being able to use the corporate form in order to conduct business." *Great Am. Ins. Co. of New York v. Vegas Const. Co., Inc.*, 251 F.R.D. 534, 540 (D. Nev. 2008) (cleaned up).

Still, a corporation's duty to prepare 30(b)(6) witnesses to answer questions about the designated subject matter "becomes . . . increasingly impossible as the number and breadth of noticed subject areas expand." *Apple, Inc. v. Samsung Electronics Co., Ltd.*, 2012 WL 1511901, at *2 (N.D. Cal. Jan. 27, 2012) (cleaned up); *see also Reed v. Bennett*, 193 F.R.D. 689, 692 (D. Kan. 2000) ("An overbroad Rule 30(b)(6) notice subjects the

noticed party to an impossible task."); *Acton v. Target Corp.*, 2009 WL 5214419, at *4 (W.D. Wash. Dec. 22, 2009) (same). Accordingly, Rule 30(b)(6) prevents undue burdens on corporate deponents by requiring that noticed topics be described with "reasonable particularity." Fed. R. Civ. P. 30(b)(6).

The bottom line is that the "effectiveness of [Rule 30(b)(6)] bears heavily upon the parties' reciprocal obligations" to identify topics with particularity and prepare witnesses in good faith. *Lipari v. U.S. Bancorp, N.A.*, 2008 WL 4642618, at *5 (D. Kan. Oct. 16, 2008). "[I]t is simply impractical to expect Rule 30(b)(6) witnesses to know the intimate details of everything." *Fed. Ins. Co. v. Delta Mech. Contractors*, LLC, 2013 WL 1343528, at *4 (D. R.I. Apr. 2, 2013); *see also RM Dean Farms v. Helena Chem. Co.*, 2012 WL 169889, at *1 (E.D. Ark. Jan. 19, 2012) (granting protective order where "[t]he 30(b)(6) notice would require [defendant] to produce a corporate representative or corporate representatives to testify on topics so vast in number, so vast in scope, so open ended, and so vague that compliance with the notice would be impossible").

## IV. ANALYSIS

### A. Waiver

First, the Court considers whether, as Plaintiffs argue, Defendants waived their opportunity to file this Motion by failing to file it in a timely manner. "[A] party is not empowered to grant itself, de facto, the relief it seeks from the Court by delaying in filing a motion to such an extent that it cannot be resolved prior to the scheduled event." *Twin Falls NSC, LLC v. S. Idaho Ambulatory Surgery Ctr., LLC*, 2020 WL 5523384, at *14 (D. Idaho Sept. 14, 2020) (quoting *Nationstar Mortg., LLC v. Flamingo Trails No.7 Landscape*

*Maint. Ass'n*, 316 F.R.D. 327, 336 (D. Nev. 2016)). "The odor of gamesmanship is especially pronounced in the context of discovery disputes where it appears parties routinely seek to delay their discovery obligations by filing [a] motion for protective order on the eve of a . . . noticed deposition." *Id.* (quoting *Cardoza v. Bloomin' Brands, Inc.*, 141 F. Supp. 3d 1137, 1141 (D. Nev. 2015)).

Here, the Defendants agreed to depositions on August 8, 2022, but it took such a long time to work through disagreements over their appropriate scope that, by the time the parties had completed the necessary prerequisites to filing the instant motion, the date had passed. Though Defendants' Motion came later than expected, it does not bear the "odor of gamesmanship" the Court warned about in *Twin Falls*. 2020 WL 5523384, at *14. Under local policy, the Court does not entertain motions for protective orders until the parties have met and conferred and gone through an informal dispute resolution process. *See* https://id.uscourts.gov/district/judges/nye/Discovery_Disputes.cfm (explaining dispute resolution process). *See also* Dist. Idaho L. Civ. R. 37.1–2. That process takes time. It would be unfair to deny the instant motion for being untimely when the Court's own policies and procedures necessitate certain delays. Where, as here, there is no evidence of bad faith, stonewalling, or gamesmanship, and the parties participated in the informal dispute resolution process in good faith, the Court will not deny a motion of this type merely for being filed later than the parties anticipated. The Court finds that Defendants have not waived their Motion by failing to file it in a timely fashion.

Next, the Court considers the merits. It must determine whether Defendants have carried their burden of showing good cause for a protective order, and if so, whether the

revisions and deletions they propose are an appropriate remedy. Defendants assert that Plaintiffs' deposition topics are variously protected by privilege and the work product doctrine; improperly designed to seek expert opinions or legal conclusions; unknown to the corporate deponents; and irrelevant, vague, and ambiguous. The Court considers each argument in turn.

### B. Issues Applicable to All Defendants

#### 1. Work Product / Attorney Client Privilege

All Defendants object to five topics on the grounds that they invade attorney–client privilege or the work product doctrine.[2]

"The attorney-client privilege protects confidential disclosures made by a client to an attorney in order to obtain legal advice, . . . as well as an attorney's advice in response to such disclosures." *United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009). The party asserting this privilege bears the burden of proving every element of an eight-part test:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

*Id.* (cleaned up).

The work product doctrine provides that "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by

---

[2] Defendants' Motion does not specify which of the two objections applies to which topic. *See generally* Dkt. 37-1, at 9–11.

or for another party or its representative[.]" Fed. R. Civ. P. 26(b)(3). "At its core, the work product doctrine shelters the mental processes of the attorney, providing a privileged area with[in] which he can analyze and prepare his client's case." *United States v. Nobles*, 422 U.S. 225, 238 (1975).

The doctrine does not protect materials prepared "in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for other nonlitigation purposes." Fed. R. Civ. P. 26(b)(3) Advisory Committee Notes, 1970 Amendment. A corporation's legal compliance policy that serves as a reference or instructional guide to corporate employees is primarily a "business" policy rather than a "legal" policy, even if based on the advice of counsel. *See, e.g.*, *Sherwood v. BNSF Ry. Co.*, 325 F.R.D. 652, 661 (D. Idaho 2018) (cleaned up) ("The work product rule does not come into play merely because there is a remote prospect of future litigation."); *Dewitt v. Walgreen Co.*, 2012 WL 3837764, at *5 (D. Idaho Sept. 4, 2012) (refusing to issue a protective order on certain policy documents because they were created by standing policy, not from a need for immediate legal advice).

District courts in the Ninth Circuit have found that, though deponents must answer as to matters known or reasonably available to the corporation, questions regarding whether certain practices conform with corporate policies are outside the scope of 30(b)(6) depositions. *See, e.g.*, *Boyer v. Reed Smith*, LLP, No. C12-5815 RJB, 2013 WL 5724046, at *4 (W.D. Wash. Oct. 21, 2013) (cleaned up) ("Plaintiff is not permitted to request an expert opinion as to whether certain practices complied with corporate policies. The inquiry must be confined to matters known or reasonably available to the organization.");

MEMORANDUM DECISION AND PROTECTIVE ORDER - 8

*Dagdagan v. City of Vallejo*, 263 F.R.D. 632 (E.D. Cal. 2010) (finding that, though Rule 30(b)(6) deponent was required to answer questions about corporate policies, he was not required to say whether certain practices or documents reflected compliance or non-compliance with those policies).

Here, the five disputed topics seek testimony regarding the way Defendants collected and organized information about accidents:

1. Policies, procedures, rules, and practices for collecting, organizing, storing, summarizing, and retrieving information about injury claims or incidents that would be applicable to a claim or incident involving a Cyclone insulation blower.[3]

2. All steps undertaken to determine the occurrence or non-occurrence of prior injury claims or incidents involving Cyclone insulation blowers in order to respond to written discovery requests.[4]

3. Procedures for collecting, organizing, storing, summarizing, and retrieving information about complaints from [distributors, retail stores, and/or] customers that would be applicable to complaints involving a Cyclone insulation blower.[5]

4. All steps undertaken to locate complaints involving Cyclone insulation blowers from [distributors, retail stores, and/or] customers in order to respond to written discovery requests.[6]

5. Any investigation related to the incident that gave rise to this case that occurred prior to the retention of counsel.[7]

These topics do not deal with substantive information. Instead, they seek the processes and policies by which Defendants collected information. Defendants argue that

---

[3] Intec Topic No. 29, Home Depot Topic No. 27, and Greenfiber Topic No. 38.
[4] Intec Topic No. 30, Home Depot Topic No. 28, and Greenfiber Topic No. 39.
[5] Intec Topic No. 31, Home Depot Topic No. 29, and Greenfiber Topic No. 40.
[6] Intec Topic No. 32, Home Depot Topic No. 30, and Greenfiber Topic No. 41.
[7] Home Depot Topic No. 31 and Greenfiber Topic No. 42.

MEMORANDUM DECISION AND PROTECTIVE ORDER - 9

"[r]eview of records that occurred with the assistance of counsel is . . . protected work product." Dkt. 37-1, at 10. In support, they cite *Lundquist v. First Nat'l Ins. Co. of Am.*, a case where a judge granted a protective order on similar deposition topics involving systems and processes used for collecting information. 2019 WL 4034769, at *5 (W.D. Wash. Aug. 27, 2019). The *Lundquist* court found that these topics were duplicative of information the plaintiffs already had and, because they might require testimony from attorneys, reasoned that they were protected by attorney–client privilege or the work product doctrine. *Id.*

Plaintiffs argue that these topics are necessary to determine whether Defendants have actually produced all the relevant evidence they have, and that they do not entail privileged issues. In support, they cite *Sherwood v. BNSF Ry. Co.*, a case from this district in which Magistrate Judge Ronald E. Bush granted a motion to compel disclosure of a defendant's internal policies and procedures. 325 F.R.D. at 661. In *Sherwood*, the court was not persuaded by arguments that the requested discovery was protected by attorney–client privilege or the work-product doctrine. "It is well-understood that the mere fact that a person is a lawyer does not lay a cloak of privilege upon everything that lawyer prepares, sees, or hears." *Id.* (quoting *U.S. v. Chen*, 99 F.3d 1495, 1501 (9th Cir. 1996)). Further, "the fact that in-house counsel drafted, revised, or reviewed a document or policy [does not] necessarily make it protected by the work-product doctrine." *Id.*

The Court finds that *Sherwood* is the closer analogy here and the more persuasive authority. The mere fact that the deposition topics might potentially require testimony from attorneys does not mean that the topics at issue are protected by attorney-client privilege.

MEMORANDUM DECISION AND PROTECTIVE ORDER - 10

Defendants have not made any showing that the requested material satisfies the 8-part test from *Ruehle*, which is the relevant standard of proof. Nor have they alleged any specific facts explaining why their non-attorney deponents could not meaningfully testify on those topics. As drafted, the topics seek information regarding the Defendants' policies and processes; not whether Defendants complied with those policies. If, in depositions, Plaintiffs seek answers that are truly privileged, Defendants can object.

Likewise, the topics do not fall under the work-product doctrine. Plaintiffs do not seek the mental processes of any attorney. Nor do they seek the production of documents or tangible things prepared in anticipation of this litigation. Even if they did, this Court has found that legal compliance policies handling how information is collected and processed after accidents are primarily business policies, not legal ones. *See Sherwood*, 325 F.R.D. at 662–63 ("even if counsel drafted the policies in anticipation [of litigation] . . . there are also readily-apparent business needs . . . that call for creating and communicating such policies. Given this fact, [defendant]'s blanket assertion that its policies or procedures are privileged as attorney-client communications, or protected from disclosure as work product, simply goes too far."). Defendants can object to any specific deposition question that raises valid work-product issues. Thus, under these circumstances, it does not violate the letter or the spirit of the work-product doctrine for Plaintiffs to ask about Defendants' policies for collecting and processing relevant information.

2. *Expert Opinions / Legal Conclusions*

A 30(b)(6) deponent may offer the subjective beliefs and opinions of the corporation, but not his or her own personal opinions. *See Brazos River Auth. v. GE Ionics,*

*Inc.*, 469 F.3d 416, 433 (5th Cir. 2006). Similarly, though a 30(b)(6) deponent may offer relevant technical information within corporate knowledge, he or she "cannot make comments that would otherwise require expert qualifications," including conclusions of law. *Id.* at 435; *see also Torres v. Oakland County*, 758 F.2d 147, 151 (6th Cir. 1985).

Here, Defendants argue that Plaintiffs' deposition topics would require deponents to improperly give expert opinions or make legal conclusions. With one exception,[8] Defendants' briefing does not specify which topics these objections apply to. Instead, it argues in generalities, asserting that Plaintiffs cannot appropriately ask "whether something was 'reasonably foreseeable,' 'unsafe,' its 'useful safe life,' whether or not something was 'proper' or 'complied' with any standard or perception, what constitutes a 'safety hazard,' and whether or not the design of any product or the warnings associated with the product made it defective." Dkt. 37-1, at 11. Without a specific objection asserted against a specific topic, the Court cannot issue an effective protective order. If Plaintiffs ask a question that requires the deponent to give a personal opinion, or the kind of opinion that could only be given by an expert witness, or a legal conclusion, Defendants can object. The Court will not, however, preemptively limit the scope of deposition topics on these grounds.

---

[8] Defendants list Intec Topic 22 as an example. This topic seeks testimony on "[t]he approximate date on which Blower 107209 could no longer safely be operated due to any time-dependent safety hazard." Dkt. 42, at 6. This question could be answered with the technical knowledge of the corporation, or the subjective opinion of the corporation, without requiring the kind of impermissible personal expert testimony that Defendants object to. If such information is outside the knowledge of the corporation, the deponents can properly answer that they do not know. If a question unambiguously demands a legal conclusion as an answer, Defendants can instruct the deponent not to answer.

MEMORANDUM DECISION AND PROTECTIVE ORDER - 12

### 3. The Relevance of Advertising Information

Plaintiffs seek deposition testimony regarding "when, why, by whom, and according to what process Cyclone insulation blowers were advertised, marketed, and/or promoted." Dkt. 37-1, at 14 (identifying the topic as Intec Topic No. 26, Home Depot Topic No. 22 and Greenfiber Topic No. 32). Defendants object that this topic is simultaneously "overbroad, unduly burdensome, not limited in time or scope, lacks reasonable particularity, is vague and ambiguous, is not likely to lead to the discovery of relevant evidence, and is not proportional to the needs of this case." Dkt. 37-1, at 14. Defendants' brief does not develop any of these objections[9] beyond arguing that the topic is irrelevant because Plaintiffs did not respond to an ad when deciding to rent the blower. They cite *Hancock v. Aetna Life Ins. Co.*, a case in which a judge prevented a plaintiff from deposing a non-party vendor about its marketing practices on proportionality grounds, despite plaintiff's insistence that the information was relevant. 321 F.R.D. 383, 395 (W.D. Wash. 2017).

Plaintiffs concede that they did not see or respond to an ad before deciding to rent and use the blower. Nevertheless, they contend that ads remain relevant because they tend to show: (1) what kind of consumers Defendants were targeting, and (2) what representations Defendants were making to the public about the blower's safety or ease of use. Because Defendants Greenfiber and Intec indicated in other discovery that they have

---

[9] Defendants bear the burden of showing the need for a protective order. Conclusory allegations and boilerplate objections do not carry that burden. *See Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130–31 (9th Cir. 2003).

little or no advertising material, Plaintiffs argue that the burden of discussing it is slight and so the topic does not raise proportionality issues. Defendants argue that, on the contrary, "it will be monumentally challenging for these three nationwide corporations to locate and confirm or deny the existence of responsive advertising." Dkt. 42, at 7.

The Court finds that the underlying facts in *Hancock* are so different from the instant case that its holding is unhelpful. Critically, in *Hancock*, the plaintiff was seeking to depose a nonparty. Here, Plaintiffs are seeking to depose named Defendants. Further, the *Hancock* plaintiff claimed the information was relevant to a claim for breach of fiduciary duty. Here, the underlying claims are strict products liability and negligence. Because the relevance of information depends so heavily on the facts of the case and nature of the claims and defenses, the Court will not read a case with substantially different facts and issues to create a rule that advertising information can never be relevant.

As drafted, Plaintiffs' topic is relevant to their negligence claim. Information about who Defendants targeted with their marketing and what claims and assertions they made about the blower's safety or ease of use bears on the relevant standard of care and potentially even on the element of breach. It would be relevant to know, for instance, whether Defendants' marketing materials contained warnings that were not conveyed to Plaintiffs. Further, because Defendants Greenfiber and Intec have conceded that they have very little marketing material,[10] the Court is persuaded that, for those Defendants, the burden of preparing to be deposed on this topic is slight.

---

[10] "Greenfiber indicated that it has no advertising documents at all . . . and Intec claims it has only a handful of short videos." Dkt. 41, at 15.

With regard to Defendant Home Depot, proportionality is a closer question. Because Home Depot did not design or manufacture the blower, nor market it as one of its own products, the connection between Plaintiffs' claims and the deposition topic is more tenuous. The burden of preparation may also be greater: the briefing leaves it unclear whether marketing for Home Depot is controlled at the local or corporate level. Plaintiffs' brief does state, however, that Home Depot's legal team had requested its advertising materials and that they were forthcoming before Home Depot apparently changed its mind. *See* Dkt 41, at 15. Because Home Depot has already taken steps to begin preparing for this topic, and because it remains relevant to Plaintiffs' claims to know whether Home Depot was making different claims about the blower to different customers, the Court finds that the topic is acceptably proportional. Thus, because the topic is relevant and proportional with regard to all Defendants, the Court will not issue a protective order for these topics on these grounds.

**C. Issues Specific to Defendant Home Depot**

   *1. Lack of Knowledge*

Plaintiffs' topics seek specific information about the design and use of the blower. Topics 4–7 seek detailed information and admissions about the safe, proper, and recommended uses of the blower and the intended purpose of its safety bars and hopper extension. Topics 9 and 10 seek information about the process Home Depot used to evaluate whether the blower was safe to rent out, and what attachments the rental blower should include. Topics 12, 14, 15, and 19 all seek testimony about the "useful safe life" of the blower.

MEMORANDUM DECISION AND PROTECTIVE ORDER - 15

Home Depot, which did not design, manufacture, or maintain the blower, objects that these topics seek information that it could not reasonably be expected to know. It points out that the blowers it allowed to be rented from its stores did not even have a hopper extension. Because preparing for these topics would, in its estimation, require an external investigation into the practices and intent of Greenfiber and Intec, Home Depot argues that the topics are impermissible.

Plaintiffs disagree with Defendants' argument that preparing for these topics would require an external investigation. They argue that preparation would merely mean conducting "a robust internal investigation" and that, if the investigation yields no results, the deponent can say Home Depot has no relevant information. *See* Dkt. 41, at 16. Further, they argue that the topics are highly relevant because they tend to reveal how, if at all, Home Depot evaluated the safety of products before renting them to customers.[11]

The bulk of these topics are significantly less relevant to Home Depot, which merely allowed the blower to be rented from its store, than Intec, which designed and manufactured the blower, or Greenfiber, which owned and maintained it. The Court is not persuaded that these technical questions are so central to Plaintiffs' case that they require a party that played no role in the blower's design to conduct a "robust internal investigation" on its features and intended use.

Plaintiffs argue that they need these topics because they might show the process

---

[11] Plaintiffs also argue that Home Depot failed to prove with affidavits and concrete examples that it is ignorant of this information. Home Depot responds that its answers to interrogatories establish its lack of knowledge under oath. The Court cannot imagine what kind of further documentary evidence would serve to prove that someone *does not know* something.

MEMORANDUM DECISION AND PROTECTIVE ORDER - 16

Home Depot used to evaluate the safety of rental products. This argument is unpersuasive because Plaintiffs have already listed two topics—9 and 10—that explicitly ask about this process. If Plaintiffs' interest in the technical aspects of the blower amounts to mere curiosity about Home Depot's process for evaluating rental products, topics 4–7, 12–15, and 19 are redundant of topics 9 and 10.

Plaintiffs' Response explains why they need information about the blower's useful safe life: without information about the product's lifespan, they cannot know whether the statute of repose found in Section 6-1403 of the Idaho Code will block their recovery. Dkt 41, at 12. However, Plaintiffs do not explain why they need this information from all three Defendants separately. Plaintiffs have already noticed Intec and Greenfiber—which are in a better position to answer questions about the design, use, and lifespan of the blower—with virtually identical topics. Requiring Home Depot to prepare to give detailed technical information that: (1) its involvement with the blower gave it no reason to know, and (2) will be sought from two other, more authoritative deponents, would violate the principle of proportionality. Thus, the Court will issue a protective order specifying that Home Depot need not prepare a deponent for topics 4–7, 12–15, and 19.

### D. Issues Specific to Defendant Greenfiber

#### 1. Time Limits and Reasonable Particularity

Plaintiffs' deposition notices state that the topics they list are not exhaustive, implying that the scope of the depositions might expand beyond the noticed topics. Dkt. 37-1, at 16. Defendant Greenfiber argues that this ambiguity violates Rule 30(b)(6), which requires that topics be identified with "reasonable particularity." Plaintiffs respond that

they do not intend to ask questions beyond the scope of the noticed topics, but that the law would allow them to. They point to yet another *Sherwood* case from this District finding that 30(b)(6) notices delineate the scope of the duty of preparation, not, as Greenfiber argues, the scope of inquiry in the actual deposition. *See Sherwood v. BNSF Ry. Co.*, 2018 WL 8619793, at *2 (D. Idaho June 12, 2018) (Lodge, J.) ("Most district courts, including those in the Ninth Circuit, hold that the Rule 30(b)(6) deposition notice serves as a minimum, rather than a maximum, for identifying the topics to be addressed at the deposition.") Plaintiffs are correct: the noticed topics do not delineate the extreme limits of permissible inquiry during a 30(b)(6) deposition. *Id.* Nevertheless, Greenfiber has no obligation to prepare deponents to testify on topics not noticed with reasonable particularity.

Plaintiffs' notices also include several topics that Greenfiber argues are vague, ambiguous, and impermissibly not limited by time. These include Greenfiber Topics 18–21 and 24–29, which seek detailed, specific information about the blower's useful safe life. For example, Greenfiber Topic 20 seeks answers on "[t]he details of any and all time-dependent safety hazard(s) that limited the duration that Blower I07209 could safely be operated." Dkt 41-1, at 22. Greenfiber expresses confusion about these topics and argue that, without further definitions or explanation, the topics should be struck.

Plaintiffs argue—and the Court agrees—that the correct way to resolve any confusion on these points is by clarifying questions in real time at the deposition, not altering the noticed topics. The Court finds that these topics are not so vague or ambiguous that preparing deponents to speak on them would unfairly burden Greenfiber. Greenfiber's

MEMORANDUM DECISION AND PROTECTIVE ORDER - 18

other objections—that the topics are not reasonably time limited and that there are more topics than necessary to cover the relevant information—are not sufficient to carry the burden required for a protective order. After carefully reviewing the disputed topics, the Court does not find them to be temporally ambiguous. As Plaintiffs point out, at least four of them are limited to a single calendar day each, and the rest are not so vague that Greenfiber would be obligated to be prepared to answer any question about any event in the entire history of any blower. By giving notice of several specific topics rather than a single general one, Plaintiffs have likely reduced the burden of Greenfiber's preparation. For these reasons, Greenfiber has not carried its burden to show its need for a protective order on these topics.

## V. CONCLUSION

Defendants have, with one exception, failed to carry their burden of showing that a protective order is necessary. Because it would not be proportional for Plaintiffs to require Home Depot to conduct a thorough internal investigation to find information that it could not reasonably be expected to have, and that two other, more authoritative defendants will be deposed on, the Court issues this Protective Order with respect to Home Depot topics 4–7, 12–15, and 19. Home Depot need not prepare a deponent on these topics. As to all other disputed topics, the Court will not issue such an order.

## VI. ORDER

The Court HEREBY ORDERS:

1. Defendants' Joint Motion for a Protective Order (Dkt. 37) is GRANTED in part and DENIED in part.

MEMORANDUM DECISION AND PROTECTIVE ORDER - 19

2. The Court GRANTS the Motion with respect to Home Depot topics 4–7, 12–15, and 19.

    a. Defendant Home Depot need not prepare a deponent for these topics.

    b. This Protective Order shall not be construed to apply to any other Defendant or topic.

3. The Court DENIES the Motion with respect to all other topics.

DATED: January 31, 2023

_____

David C. Nye
Chief U.S. District Court Judge